IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| BILLY RAY JOHNSON, §<br>    *Plaintiff,* §<br>§<br>vs. §<br>§<br>SMITH COUNTY SHERIFF'S §<br>DEPARTMENT, and §<br>SHERIFF LARRY SMITH, §<br>    *Defendants.* § | CIVIL ACTION NO. 6:17cv520-RC-KNM<br><br>JURY DEMANDED |

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW DEFENDANTS LARRY SMITH AND THE SMITH COUNTY SHERIFF'S OFFICE, and file this their Motion for Summary Judgment, and, in support thereof, would show unto the Court as follows:

### I.**Parties**

The Smith County Sheriff's Department and Sheriff Larry Smith are the only two named Defendants in this case. Each of the two named Defendants have current Motions to Dismiss pending. The "Sheriff's Office" Motion to Dismiss is based on the fact that the Smith County Sheriff's Office has no jural existence,[1] and we reassert that argument in this Motion for Summary Judgment. We have also moved to dismiss Sheriff Smith since he has no personal involvement in the underlying arrest or conviction, and those assertions are also argued herein.

### II.**Undisputed Summary Judgment Facts**

In Plaintiff's Original Complaint, he alleges that he was arrested on May 12, 2017

---

[1] *Estate of Schroeder v. Gillespie Cty.*, 23 F. Supp. 3d 775, 781 (W.D. Tex. 2014)(county sheriff's Office has no jural existence.

1

for aggravated robbery without probable cause. *See Plaintiff's Original Complaint* at pg. 3 (Doc. # 1).

Billy Ray Johnson, the Plaintiff, was actually charged with tampering with physical evidence, a third degree felony, and possession of a controlled substance. See Smith County Official Court Documents in Cause Number 241-1241-17 collectively attached hereto as Exhibit 1 at pgs. SC 0001-33, 0034, 0040.[2] Plaintiff pled guilty on November 15, 2017 to Possession of a Controlled Substance, stipulated to the evidence of his guilt, and the other charges were dismissed pursuant to Section 12.45 of the Texas Penal Code. *Id.* at SC0012, 0034, 0040-41, 0049. The Smith County D.A.'s Case Presentation Form is also attached hereto as part of Exhibit 1, and the packet of information contained in Exhibit 1 contains the following: 1) Offense Report; 2) Supplemental Reports; 3) Arrest Report; 4) Miranda Warning; 5) Arrest Warrant with Affidavit; 6) Complete Criminal History; 7) Witness Statements; 8) Video and Audio Recordings (Body-Cam Video); 9) Photographs; 10) Affidavit; 11) Vehicle Inventory; and 12) Property Inventory Sheet. *Id.* at SC0114 - 0161. The arrest date was 5-12-2017, and the victim was Patrick Mahomes, III. *Id.* 0114.

---

[2] The documents attached hereto collectively as Exhibit 1 are all admissible in evidence pursuant to Federal Rule of Evidence 803(8). That Rule states, in relevant part, as follows:

   \*    \*    \*    \*    \*

(8) Public Records. A record or statement of a public office if:
 (A) it sets out:
  (I) the office's activities;
  (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
  (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
 (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

The underlying robbery in this case occurred at 8821 Mansion Creek Circle, Tyler, Texas 75707. *Id.* at SC0114 - 0161. It was reported at 21:17:02 on May 12, 2017. At the time that the robbery was reported, it was still in progress. *Id.* The suspect in the robbery was driving a gray/silver colored Ford Taurus. *Id.*

On that date and at that time, Patrick Lavon Mahomes, III (former quarterback for Texas Tech and current quarterback for the Kansas City Chiefs) had his wallet taken at gunpoint, as well as the wallets of two other victims and the purse of Mahomes' girlfriend. *Id.* In Mahomes' wallet, he had three credit cards, his insurance card and an ID card. *Id.* After the robbery occurred, the police were still on scene when the suspect vehicle pulled past the location of the robbery. *Id.* Law enforcement officers pursued and stopped the vehicle. *Id.* Located immediately adjacent to the passenger side door after the vehicle stopped were pipes and drug paraphernalia obviously discarded by the passenger. Upon search of the vehicle and the suspects, Mahomes' insurance card was found in the pocket of Billy Ray Johnson. *Id.*

Deputy E. Nieto of the Smith County Sheriff's Office was dispatched to the residence at 8821 Mansion Creek Circle in reference to a report of an aggravated assault. *Id.* at 12. Dispatch reported that the reporting party was Brittany L. Matthews, and the assailant might have a gun. Id. He arrived at approximately 2134 hours. *Id.* Precinct 3 Constable Deputies Dalvin and Blackman were already on the scene, along with Smith County Sheriff's Deputy M. Odom. *Id.* Ms. Mathews related that she and her boyfriend, Patrick Mahomes III, and two other male friends, Jaylon Dews and Jake Parker, had gone to watch a UTT Baseball game. *Id.* They stopped on the way home at a Shamrock Station

3

at the corner of Loop 323 and G.E. Drive. *Id.* Patrick Mahomes, III went inside to buy some beer. *Id.* They were parked in the drive way to her house, when a vehicle pulled in behind them. *Id.* As they were getting out of their vehicle, the assailant approached the driver side of Mahomes' vehicle and demanded that they all "give him their shit." *Id.* The suspect did not see her, so she called 911. *Id.* The suspect said several times that he had a "heater," which she understood to be a gun. *Id.* She was extremely scared and feared for her life. *Id.* The assailant next stated that he wanted one of the friends, Jake Parker, to give him the beer, and Jake complied with the demand. *Id.* Jake then took off running, and Brittany ran after Jake, following him. *Id.* As Brittany ran from the scene, she jumped a fence in her back yard and ripped her pants. *Id.* Jake Parker's statement and Jaylon Dews' statement are both completely consistent with Brittany Matthews' statement *Id*.

    Jaylon stated that when the assailant started walking back toward his vehicle again, Patrick Mahomes told Jaylon to get in Mahomes' vehicle, and Mahomes and Jaylon Dews took off, with the assailant in pursuit in his vehicle. *Id.* Patrick was able to lose the assailant around Loop 323 and Highway 64. *Id.* The assailant turned into "Planet Fitness," and Mahomes kept straight on "Old Henderson Highway." *Id*. He and Mahomes then met law enforcement at a near by gas station and returned to the scene of the crime to give their statements to law enforcement. *Id*. Mahomes, Dews and Parker all identified the assailant as a white male, approximately 5'6" tall, blonde shaggy hair with a slender build. *Id.*

    Mahomes' statement is completely consistent with the statement of Matthews, Parker and Dews. Mahomes did clarify that on one of the occasions when the assailant

4

went back to his vehicle, Mahomes took his gold watch and necklace off and threw them into the yard so the assailant would not notice them and take them. *Id.* The assailant kept on making statements like "God, should I do it to them." *Id.*

After taking the statements with his "Body-Cam," Deputy Neito and Detective T. McDonald (Smith County Sheriff's Office) a vehicle traveling at a very slow pace passed in front of the crime scene. *Id.* All of the victims were still outside with the officers, and they all said that they recognized the vehicle. *Id*. Ms. Matthews yelled out several times, "that's the car!" *Id.* Deputy Neito immediately ran to his vehicle and attempted to catch up to the suspect vehicle. *Id.* He followed the vehicle to the intersection of CR 273 and Mansion Creek, and the vehicle picked up speed as it traveled north bound on CR 273. *Id.* He followed the vehicle left onto Gish Lane and then left again on Malisa Circle. *Id*. Deputy Neito activated his over headlights and siren to conduct a traffic stop on the vehicle bearing license number DXP-6927. *Id*. He conducted a felony stop on the driver who matched the description of the white male identified by the victims (later identified as Michael Pinkerton-DOB 09/12/1982). *Id.* The suspect was handcuffed and put in the back seat of Deputy Neito's patrol unit. *Id*. Deputy Neito observed a black male occupying the passenger seat, who was later identified as Billy Ray Johnson (DOB 05/04/1959). *Id.* He detained Mr. Johnson in a standing position in front of his patrol vehicle until he could secure the vehicle and make sure that their were no weapons on site. *Id.* Deputies J. Railsback, J. Decor and Sgt. M. Christian all arrived on location to assist. *Id.* Deputy Railsback discovered several narcotic related items next to the passenger side where Billy Ray Johnson was sitting. *Id.*

The items located were a purple pill container that contained a hard white rock believed to be crack cocaine. *Id.* This substance field tested positive for cocaine. *Id.* A glass pipe was also located two to three feet from the container. *Id.* Inside the glass pipe, a crystal like substance appeared to be methamphetamine, and it field tested positive for methamphetamine. *Id.* A small brown metal pipe was also found. *Id.* A small white towel was also found, which was substantially similar to one located on the dash of the suspect vehicle. *Id.* There was condensation on the grass where the items were found (the grass was wet), but there was no condensation on the items. *Id.* The passenger side window was also partially rolled down. *Id*. Deputy Neito reasonably believed that the suspect had thrown the items from the vehicle while the driver was being detained, and Billy Ray Johnson was arrested for "Tampering with Physical Evidence." *Id.*

Detective T. McDonald's Report is consistent with Deputy Neito, although Detective McDonald also noted that when the suspect vehicle passed them with its headlights off. *Id.* Upon identifying Billy Ray Johnson, Deputy Nieto found a United Healthcare Insurance card in Johnson's wallet that belonged to victim Jaylon Dews. *Id.* The 12 pack of Coors 16 oz. beer taken from the victims was also found in the suspect vehicle. *Id.* Detective McDonald was also contacted by Sgt. Christian of the Smith County Sheriff's Department, who located more stolen property in the roadway of Gish and Malisa. *Id.* Detective McDonald observed a debit/credit card and a drivers license belonging to Patrick Mahomes, II found at Gish and Malisa streets. *Id.* He also observed a debit/credit card with the last name of "Dews" on it. Other cards were face down on the roadway, and these were photographed, collected and fingerprinted. *Id.*

In relationship to liability, first, there was clearly probable cause for Plaintiff's arrest and subsequent detention. Second, as set out below in more detail, *Heck* and its progeny bar Plaintiff's claims. Third, Plaintiff's claims fail because no officer intentionally or recklessly submitted information to a magistrate or to the Grand Jury, and the actions of these independent intermediaries finding probable cause breaks the chain of causation, and shields the officers from liability. Fourth, the Smith County Sheriff's Office has no independent jural existence and cannot be sued. Fifth, Sheriff Larry Smith had no personal involvement in this case, and he is entitled to qualified immunity from suit.

### IV. Applicable Law

#### A. Unlawful Arrest

To ultimately prevail on his section 1983 false arrest/false imprisonment claim, Johnson must show that the Smith County Sheriff Larry Smith was personally involved in the Plaintiff's arrest without probable cause and/or that he created a policy, custom or practice that actually caused the alleged arrest without probable cause.

However, even for the arresting officers, to ultimately prevail on his section 1983 false arrest/false imprisonment claim, Johnson has to show that arresting officers did not have probable cause to arrest him. *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004); *see Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir.2001) ("The 'constitutional torts' of false arrest ... and false imprisonment ... require a showing of no probable cause."). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty*, 391

F.3d at 655-56; *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir.2001) (internal quotation and citation omitted). Therefore, the actual arresting officers would be entitled to qualified immunity if a reasonable officer in that officers position could have believed that, in light of the totality of the facts and circumstances of which the Officers were aware, there was a fair probability that Johnson had committed or was committing an offense. *Haggerty*, 391 F.3d at 655-56; *see Glenn*, 242 F.3d at 313; *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir.2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Haggerty*, 391 F.3d at 655-56; *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (emphasis added) (internal quotation and citation omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) ("... it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable"). In sum, Johnson "must clear a significant hurdle to defeat the Officers qualified immunity." *Brown*, 243 F.3d at 190. "[T]here must not even arguably be probable cause for the ... arrest for immunity to be lost." Id. (internal quotation and citation omitted).

In this case, the suspects in the armed robbery, identified the vehicle involved driving slowly by the crime scene with its lights off. The victims, who were still at the scene all stated that the suspect vehicle was the vehicle involved in the robbery. The Sheriff's

deputies gave chase, stopped the vehicle and found drug paraphernalia and drugs that had obviously been thrown out the window from the passenger of the vehicle by the passenger.

When searched, the Plaintiff had the health insurance card of one of the victims in his an item that had been stolen in the robbery. From the robbery scene to the scene of the stop, credit cards and identification cards had also been found in the intersection through which Plaintiff fled the officers. Clearly, there is probable cause to believe that Plaintiff was guilty for the charges of possession of less than an ounce or crack cocaine, tampering with physical evidence and perhaps even robbery. Plaintiff was charged with the first two offenses, pled guilty to the offense of possession of a controlled substance and the tampering with evidence charge was dismissed pursuant to 12.45 of the Texas Penal Code as a result of his conviction in the other case. This case should be dismissed with prejudice.

> B. *Heck* **and its Progeny Bars the Plaintiff's Claims**

Under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that violation arose from the same facts attendant to the charge for which he was convicted, unless he proves that his conviction or sentence has been, in some way, reversed or invalidated. *Ducksworth v. Rook*, 647 Fed.Appx. 383, 385-88 (2016); *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (internal quotation marks omitted). If specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction, then a plaintiff's claim is barred by *Heck*. *Ducksworth*, 647

Fed.Appx. at 385-88; *Bush*, 513 F.3d at 498 n. 14.  For example, where a complaint describes "a single violent encounter in which the plaintiff claimed he was an innocent participant" but the allegations are inconsistent with his conviction, *Heck* applies to bar his excessive-force claims. *Ducksworth*, 647 Fed.Appx. at 385-88; *Daigre v. City of Waveland*, 549 Fed.Appx. 283, 286 (5th Cir. 2013) (citing *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 656–57 (5th Cir. 2007)).  Likewise, a claim for false arrest/false imprisonment would be similarly barred. *Ducksworth*, 647 Fed.Appx. at 385-88.  "[I]n order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Id.; Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). The Supreme Court, in *Heck*, observed that § 1983 unlawful-arrest claims fail in cases where "[a] state defendant is convicted of and sentenced for the crime," he would have to negate an element of the offense of which he has been convicted." 512 U.S. at 486 n. 6, 114 S.Ct. 2364; *see also Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995) (explaining that the plaintiff's proof to establish his false arrest claim would demonstrate the invalidity of his conviction for resisting a search); *Ducksworth*, 647 Fed.Appx. at 385-88. In this case, Plaintiff was charged with two crimes relating to the incident in question, i.e., "Tampering with Evidence" and "Possession of a Controlled Substance." *See* Exhibit 1. He ultimately pled guilty to "Possession of a Controlled Substance" and the other charge was dismissed pursuant to Section 12.45 of the Texas Penal Code.  *Heck* therefore bars recovery for Plaintiff's improper search and/or false arrest claims, because his conviction necessarily implies that there was probable cause for any search or arrest in those cases.  *See Ducksworth*, 647 Fed.Appx. at 385-88.

The Fifth Circuit has consistently acknowledged that "*Heck* prohibits a plaintiff from using a § 1983 suit to challenge the validity of his conviction or sentence, unless the plaintiff demonstrates that the conviction or sentence has in some way been reversed or invalidated." *Dodds v. City of Yorktown,* 656 Fed. Appx. 40, 43-44 (5thCir. 2016); *Daigre v. City of Waveland, Miss.*, 549 Fed.Appx. 283, 286 (5th Cir. 2013) (per curiam) (citing *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008)). As a result, "a plaintiff's claim is '*Heck*-barred' despite its theoretical incompatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *Dodds*, 656 Fed. Appx. at 43-44 (citing *Bush*, 513 F.3d at 498 n. 14 (citations omitted)). This is because "factual assertions in pleadings are ... judicial admissions conclusively binding on the party that made them." *Id.* (*citing Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987)).

If the alleged facts in a plaintiff's complaint are inconsistent with his underlying conviction, *Heck* would bar the Plaintiff's claims. *Dodds,* 656 Fed. Appx. at 43-44. "When a plaintiff alleges tort claims against his arresting officers, the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence... [i]f so, the claim is barred ... [.]" *Id.; DeLeon*, 488 F.3d at 652 (internal quotation marks and citation omitted).

For the reasons set forth above, Plaintiff's claims must be dismissed with prejudice pursuant to the holdings in *Heck* and its progeny.

### B. No Liability for Search or Arrest Following Grand Jury Probable Cause Determination

In a situation such as the case at bar, the "independent intermediary doctrine" of the

Fifth Circuit holds that "even an officer who acted with malice ... will not be liable if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's 'independent' decision 'breaks the causal chain' and insulates the initiating party." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553–54 (5th Cir. 2016)(cert. denied sub nom *Buehler v. Austin Police Dep't*, 137 S. Ct. 1579, 197 L. Ed. 2d 704 (2017)); *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)); see *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (applying the independent intermediary doctrine to Fourth Amendment claims); see also *Russell v. Altom*, 546 Fed.Appx. 432, 436–37 (5th Cir. 2013) (applying the doctrine to First Amendment claims). Fifth Circuit precedents have applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime. The chain of causation is broken where all the facts are presented to the grand jury, or other independent intermediary, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary. *Buehler,* 824 F.3d at 553-54; *Cuadra*, 626 F.3d at 813 (quoting *Hand*, 838 F.2d at 1428). There is no evidence that anything was withheld from the Grand Jury.

    **D.**    **Sheriff Larry Smith is Entitled to Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Stanton v. Sims*, 571 U.S. 3, 6, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013); *Pearson v. Callahan*, 555 U.S.

223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016); *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011)(en banc). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6, 134 S. Ct. 3, 5, 187 L. Ed. 2d 341 (2013); *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015).

Qualified Immunity is an affirmative defense; and once properly raised by the defendant, the "plaintiff has the burden to negate the assertion of qualified immunity." *King v. Handorf*, 821 F.3d at 653; *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009); *see also Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017), *cert. denied*, No. 17-1095, 2018 WL 707021 (U.S. Apr. 16, 2018).

In the case at bar, the evidence is undisputed that Sheriff Smith was not personally involved in the arrest, prosecution or conviction of Plaintiff. Consequently, he could not have violated any clearly established statutory or constitutional rights of the Plaintiff. Hence, Sheriff Smith is clearly shielded by the affirmative defense of qualified immunity.

## V. <u>CONCLUSION</u>

First, probable cause clearly existed to arrest and detain Plaintiff. Second, the Plaintiff was convicted of "Possession of a Controlled Substance" stemming from the arrest and detention at issue. *Heck* and its progeny preclude a Section 1983 claim for the alleged

unconstitutional acts resulting in the above referenced conviction. Third, in this case, probable cause was determined and a true bill of indictment was obtained from the Smith County Grand Jury, an independent intermediary. The determination of probable cause by the independent intermediary shields Defendants from liability. Fourth, Sheriff Smith is entitled to qualified immunity for his acts in this case, because he was performing discretionary duties, in good faith within the scope of his duties as a law enforcement officer. He did not violate any statutory or constitutional rights of Plaintiff.

Finally, the Smith County Sheriff's Office has no jural existence and cannot be sued.

WHEREFORE, PREMISES CONSIDERED, Defendants request that this case be dismissed with prejudice, that Defendants recover costs of Court from Plaintiff, and for any and all other relief to which Defendants have shown themselves justly entitled.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

_____
**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com

**ATTORNEYS FOR DEFENDANTS**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing instrument was served upon pro se Plaintiff at his last known address and all counsel of record in the above entitled and numbered cause on July 23, 2018, in the following manner:

  __X__    Via Certified Mail Return Receipt Requested: 70160600000019353191
           and U.S. Regular Mail to:

_____
**Robert S. Davis**